GROOVER *v.* SAVANNAH BANK & TRUST COMPANY.

No. 12008. June 17, 1938. Rehearing denied July 12, 1938.

*O. E. Bright, Perry Brannen,* and *Lawton & Cunningham,* for plaintiff.

*William L. Clay* and *Travis & Travis,* for defendant.

Bell, Justice. Mrs. Elizabeth L. Groover filed a trover suit against the Savannah Bank and Trust Company, in which she prayed to recover damages for an alleged conversion of a corporate-stock certificate. To this suit the defendant filed general and special demurrers, which the court overruled, and the defendant excepted. The Court of Appeals reversed the judgment, so far as it overruled the general demurrer, and consequently did not pass upon the special demurrers. Certiorari was granted on petition of the plaintiff, and the case is now before this court. The facts of the case were fully stated by the Court of Appeals, and will not be repeated here. For a copy of the petition see *Savannah Bank & Trust Co.* v. *Groover,* 56 *Ga. App.* 27 (192 S. E. 49).

The defendant in certiorari filed a motion to dismiss the writ, on the grounds that it presents no question of public gravity and importance, and contains no sufficient assignment of error. The proper disposition of this motion is the first matter for determination. The petition for certiorari was granted partly for the purpose of considering and reconciling important rules of construction. The Court of Appeals applied the rule enunciated in the recent case of *Doyal* v. *Russell,* 183 *Ga.* 518 (189 S. E. 32), to the effect that where averments are made in the alternative, and any one of them is insufficient, the entire pleading is to that extent bad in substance and subject to general attack by demurrer or motion. While the same rule had in effect been applied in previous decisions by this court (*Fraser* v. *Smith & Kelly Co.,* 136 *Ga.* 18 (2), 70 S. E. 792; *Central of Georgia Railway Co.* v. *Tap-*

478

*ley,* 145 *Ga.* 792 (3), 89 S. E. 841), it seems to have been stated with more amplitude in the *Doyal* case than in any previous Georgia decision. It was further stated in that case that if both alternatives are good in substance, the petition might be subject to special demurrer for duplicity, but that it would not be subject to general demurrer. Compare *John A. Roebling's Sons Co.* v. *Southern Power Co.,* 142 *Ga.* 464 (2-a) (83 S. E. 138, L. R. A. 1915B, 900). In *Orr* v. *Cooledge,* 117 *Ga.* 195 (3) (43 S. E. 527), it was said as to duplicity that this form of pleading on the part of a plaintiff "consists, not in asserting a right to and praying for relief inappropriate to the cause of action set forth in his petition, but in making therein equivocal statements with a view to getting the benefit of two or more inconsistent theories as to his right to recover, or in basing his complaint upon different versions with respect to the facts which gave rise thereto." See also *Colquitt* v. *Georgia Railway & Power Co.,* 146 *Ga.* 249 (91 S. E. 70); *Smith* v. *McWhorter,* 173 *Ga.* 255 (3) (160 S. E. 250). Duplicity may also be defined as joining in the same count two or more distinct demands, consistent or inconsistent, any one of which would authorize a recovery *(Gainesville & Dahlonega Electric Railway Co.* v. *Auslin,* 122 *Ga.* 823, 50 S. E. 983); whereas a pleading is *alternative* when it alleges substantive facts so disjunctively that it can not be determined upon which of them the pleader intends to rely as basis for recovery. In either case the petition would be subject to special demurrer, but in the latter case it would also be subject to general demurrer if any one of the alternatives be insufficient. Anderson *v.* Minneapolis &c. R. Co., 103 Minn. 224 (114 N. W. 1123, 14 L. R. A. (N. S.) 886); 49 C. J. 97, § 91; 21 R. C. L. 451, § 15; 6 Enc. Pl. & Pr. 268.

While the writer dissented from the *conclusion* reached in the *Doyal* case, the rule therein stated is based upon sound reason, and may be applied in a proper case. It is but a corollary of the general principle that if a pleading is indefinite or ambiguous it must be construed most strongly against the pleader. It can not be applied, however, to the extent of sustaining a general demurrer, unless the pleading is actually alternative, nor unless one or more of the matters so pleaded is insufficient to state a cause of action, or an ingredient thereof, as the case may be. It must not be confused with the different and well-settled rule that where

several matters are positively and conjunctively alleged as bases for a recovery, and where the petition is ambiguous to the extent that the pleader's intention is not clearly manifest as to what form of action is relied on, the courts, in endeavoring to ascertain his intention, will prima facie presume that his purpose was to serve his best interest, and in the absence of special demurrer will so construe the pleadings as to uphold and not defeat the action. *Central Railroad Co.* v. *Pickett,* 87 *Ga.* 734 (13 S. E. 750); *Citizens & Southern Bank* v. *Union Warehouse & Compress Co.,* 157 *Ga.* 434 (7-10), 455 (122 S. E. 327); *Cook* v. *Grimsley,* 175 *Ga.* 138, 143 (165 S. E. 30); *Southern Express Co.* v. *Pope,* 5 *Ga. App.* 689, 697 (63 S. E. 809); *King Hardware Co.* v. *Ennis,* 39 *Ga. App.* 355 (4) (147 S. E. 119); *Speir* v. *Westmoreland,* 40 *Ga. App.* 302 (3) (149 S. E. 422).

As indicated above, the assignments of error relating to construction, and the apparent necessity of some clarification of the several rules mentioned, were regarded by this court as presenting questions of sufficient public gravity and importance to justify the grant of the writ. *Central of Georgia Ry. Co.* v. *Yesbik,* 146 *Ga.* 620 (91 S. E. 873); *Hicks* v. *Louisville & Nashville R. Co.,* 182 *Ga.* 595 (186 S. E. 662). We are still of the same view. We are also of the opinion that the petition substantially complies with the rule as to the form of assignments of error. The latter, we think, will sufficiently appear in subsequent divisions of this opinion. See Rule 45, 178 *Ga.* xiv. Accordingly, the petition will not be dismissed as having been improvidently granted.

■ The first assignment of error complains of the application of the rule as stated in the *Doyal* case in reference to alternative pleadings. The petitioner in certiorari asserts that the Court of Appeals erred in applying this rule, for the reason, among others, that the complaint did not set up two theories and contained no alternative or disjunctive allegations. We can not agree to this contention as related to the entire claim asserted in the petition. On the contrary, we are of the opinion that as applied to the loan of $30,000 which was made by the defendant bank to the plaintiff's husband, the petition *is* alternative. We are of the further opinion, that, as to one of the two theories upon which the plaintiff relies with reference to this particular matter, the petition was insufficient to state a cause of action, and that the Court of

Appeals therefore properly applied the rule as to alternative plead-ing to the extent of its ruling that the bank was protected to the amount of this loan. In paragraphs 3, 4, and 5 of the petition filed in the trial court, the plaintiff alleged that on or about Oc-tober 30, 1935, she signed the transfer printed upon the back of the stock certificate, and then delivered the certificate to her hus-band Robert N. Groover to enable him to raise the sum of $8000, which he claimed to need for the purpose of buying the interest of his partner in a commercial enterprise; that her husband, how-ever, took the certificate as so transferred and "procured a loan from the defendant in the sum of $30,000 and hypothecated said Coca-Cola stock to secure said loan;" and that "petitioner was in-formed, on or about June 8, 1936, that the said Robert N. Groover had procured the said loan of $30,000 from the defendant." These averments when standing alone will admit of no construction other than that the loan was obtained by Robert N. Groover in his own name, and that he pledged the stock certificate as the apparent owner. In paragraph 10 the plaintiff alleged that she "does not know whether or not the note or notes given to the defendant for said loan of $30,000 was signed in the name of the petitioner; but if they were so signed, the signature or signatures were a forgery." The plaintiff alleged other facts which perhaps might be evidential to the effect that the note or notes were purportedly signed in her name or behalf; but, on considering together all ref-erences to this loan, the petition can be reasonably construed to mean only that the plaintiff's husband either signed in his own name or forged the name of the plaintiff—she does not know which.

Upon this question, then, the pleading was clearly alternative as related to the loan, and was therefore to that extent fatally defect-ive, if under either theory the loan should be treated as valid as between the plaintiff and the bank. If the loan was obtained in the name of the plaintiff and without her authority, the bank would not be protected; but under the facts alleged the result would be otherwise if the loan was extended to the plaintiff's hus-band in his own name and behalf. The last-mentioned conclusion necessarily follows from the principle that "Where an owner has given to another such evidence of the right of selling his goods as, according to the custom of trade or the common understanding

of the world, usually accompanies the authority of disposal, or has given the external indicia of the right of disposing of his property, a sale to an innocent purchaser divests the true owner's title." Code, § 96-207. While as between the bank and Robert N. Groover the pledge of the stock may have constituted a mere bailment, and not a transfer of title (Code, §§ 12-601, 12-602; *Halliday* v. *Bank of Stewart County,* 112 *Ga.* 461, 37 S. E. 721), yet the plaintiff's transfer and delivery of the certificate to her husband operated to invest the latter with such external indicia of ownership that his pledge to an innocent lender is, on the principle of estoppel, binding upon her. The private understanding between the plaintiff and her husband that she was merely lending the stock to him did not affect the right of the bank to hold the stock as security for the loan, where it acted innocently and without knowledge of such agreement. Code, § 37-113; *Raleigh & Gaston Railroad Co.* v. *Lowe,* 101 *Ga.* 320 (28 S. E. 867); *Commercial Bank of Augusta* v. *Armsby Co.,* 120 *Ga.* 74 (47 S. E. 589, 65 L. R. A. 442); *Mack* v. *Pardee,* 39 *Ga. App.* 310 (3) (147 S. E. 147); *Lilly* v. *Citizens Bank & Trust Co.,* 44 *Ga. App.* 653 (162 S. E. 639); *Georgia Casualty Co.* v. *McRitchie,* 45 *Ga. App.* 697 (166 S. E. 49). Since it thus appears that under one of the two alleged alternatives in reference to the loan, the averments contained in the petition were insufficient to impeach the transaction, the Court of Appeals did not err in so construing the petition as to hold that the loan and the pledge were valid.

Under the allegations, however, the bank never did advance to the plaintiff's husband more than the sum of $30,000, or do any other act on faith of his ownership by reason of the transfer; and the allegations were sufficient to show that it is not entitled to protection beyond such transaction. On or about November 18, 1935, Robert N. Groover presented to the bank a letter addressed to it, under that date, purporting to have been signed by the plaintiff, and reading as follows: "Kindly forward stock certificate for one hundred shares of Coca-Cola International Corporation to the company to be transferred to Robert N. Groover, whom I am giving this stock for love and affection. Upon return of the certificate Mr. Groover will make arrangements to take care of my note at your bank." The plaintiff alleged that this letter was a forgery. While as a forgery this writing did not constitute any

notice from the plaintiff, it was yet so inconsistent with the previous transaction in which the loan had been made to the husband *in his own name* and on faith of his apparent *absolute* ownership, as to authorize a finding that it should have excited attention and put the defendant on inquiry. In such case, the defendant would be charged with notice of everything to which such inquiry might have led. Code, § 37-116; *Cummins* v. *Boston, 25 Ga.* 277 (2), 284; *Hager* v. *National German-American Bank,* 105 *Ga.* 116 (2) (31 S. E. 141); *Georgia Railroad Bank & Trust Co.* v. *Liberty National Bank & Trust Co.,* 180 *Ga.* 4 (4) (177 S. E. 803). The allegations were also sufficient to show that the defendant did, from the moment of receiving such letter, treat the stock as property of the plaintiff then and there given to her husband, subject only to its indebtedness, and assisted in disposing of her interest without authority. The petition having averred in substance the foregoing facts, and on the basis thereof having charged a conversion, it was sufficient as against a general demurrer to show notice to the defendant at the time of such disposal, and to negative any right of the defendant to claim protection as an innocent holder, except to the extent of advances previously made. *Matthews* v. *Kennedy,* 113 *Ga.* 378 (2) (38 S. E. 854); *Turner* v. *Williams,* 29 *Ga. App.* 751 (2) (116 S. E. 553).

The plaintiff further contends that the bank in finally disposing of the stock was acting as agent for her husband, and invokes the rule that an agent who assists his principal in taking the property of another without authority may be held liable in trover, although he may have acted in good faith and in ignorance of the true owner's title. Compare *Porter* v. *Thomas,* 23 *Ga.* 467, 471; *Miller* v. *Wilson,* 98 *Ga.* 567 (25 S. E. 578, 58 Am. St. R. 319); *Flannery* v. *Harley,* 117 *Ga.* 483 (43 S. E. 765); *Haas* v. *Godby,* 33 *Ga. App.* 218 (125 S. E. 897). This rule may or may not have application where the property is quasi negotiable in character *(Fulton National Bank of Atlanta* v. *Moody,* 51 *Ga. App.* 179, 179 S. E. 831, affirmed in 181 *Ga.* 616, 183 S. E. 548), and the principal actor has been invested with such external indicia of ownership that an innocent purchaser or lender would be protected in dealing with him. There would seem to be no valid reason why an agent should not be entitled to the same protection. For a practical distinction between different classes of property, see

*Chafin* v. *Cox,* 39 *Ga. App.* 301 (147 S. E. 154); *Darby* v. *Parrish,* 42 *Ga. App.* 492 (156 S. E. 462). Under the facts appearing, we do not deem it necessary to determine the applicability of the principle as to liability of an innocent agent, in a case like the present. It is sufficient here to predicate our conclusion upon the proposition that, according to the allegations, the bank had notice of the plaintiff's claim at the time it assisted her husband in obtaining a new stock certificate purporting to invest him with absolute ownership, and that in doing so it was acting without any lawful warrant or authority from her. If such be the truth of the case, the transaction amounted to a conversion of the plaintiff's interest, for which the bank may be held liable in a proper proceeding. It follows from what has been said that the Court of Appeals erred in the conclusions of law stated in the sixth division of its opinion, for the reason alleged in the seventh assignment of error, that "The defendant bank acted on the forged letter, and the forged letter was the basis on which the defendant bank procured the transfer, and not the transfer in blank by petitioner of the stock."

The next question for determination is whether the petition showed such title or interest in the plaintiff as to authorize a trover action by her. "The common-law action of trover and conversion lay to recover damages equal to the value of the goods wrongfully withheld, but not the goods themselves. The gist of this action was the unlawful conversion. 3 Bl. Com. 152. Under our action of trover the plaintiff may elect whether he will take a verdict for the property or its value, or for damages alone, or for the property alone, and its hire, if any." *Milchell* v. *Georgia & Alabama Railway,* 111 *Ga.* 760 (36 S. E. 971, 51 L. R. A. 622); Code, § 107-105. In this case the plaintiff could not well have elected to take the property, since it appeared from the petition that the defendant had lost the power to deliver it. Absolute title is not essential to the maintenance of an action of trover. An interest less than the whole title will be sufficient where it is coupled with lawful possession or an immediate right thereto. *Liptrot* v. *Holmes,* 1 *Ga.* 381; *Southern Railway Co.* v. *Strozier,* 10 *Ga. App.* 157 (73 S. E. 42); *Boswell* v. *Ivie,* 31 *Ga. App.* 807 (122 S. E. 97); *Livingston* v. *Epsten-Roberts Co.,* 50 *Ga. App.* 25 (177 S. E. 79). In the instant case, according to the allegations, the plaintiff as against

the bank was the unqualified owner of the stock certificate, except that she had permitted her husband to become the apparent owner and thus to create a pledge binding upon her in favor of the bank. Since it further appears from the allegations that the bank had notice of these facts at the time of the alleged conversion, the plaintiff, as between herself and the bank, is to be treated as the owner, subject only to such incumbrance. If the stock had been lawfully sold for the purpose of paying the loan, all right of the plaintiff as against the bank would be gone, and there could be no recovery. Also, if the debt had remained in existence and the stock were still held by the bank as collateral security therefor, the plaintiff would have no right of possession without payment or tender of the amount due. *Jeems* v. *Lewis,* 13 *Ga. App.* 456 (2) (79 S. E. 235); *Scott* v. *Sanders,* 25 *Ga. App.* 21 (2) (102 S. E. 370); *Collins* v. *Hilton,* 27 *Ga. App.* 439 (108 S. E. 824). The debt, however, has been extinguished and the stock has passed into other hands. This is not a suit in equity, and it is not incumbent on the plaintiff to repair or offer to repair the bank's loss as a condition of her right to sue. While she could not recover in a trover action upon a mere equity with no right of possession *(Gilmore* v. *Watson,* 23 *Ga.* 63), it appears from the petition that as between her and the bank she is the true owner of this stock and entitled to immediate possession, subject only to the loss which has been sustained by the bank. In *Whigham* v. *Fountain,* 132 *Ga.* 277 (2) (63 S. E. 1115), it was held that "If a pledgee by an unauthorized sale puts it out of his power to restore the property upon payment or tender of the debt secured, he is liable for its conversion, without a demand and tender of performance by the pledgor." Upon application of this principle the value of the plaintiff's interest is merely reduced, and she is entitled to sue as for a conversion, the measure of recovery to be determined by the value of the property, less the damage sustained by the bank. *Van Arsdale* v. *Joiner,* 44 *Ga.* 173 (3, 4); *Holmes* v. *Langston,* 110 *Ga.* 861 (2) (36 S. E. 251); *Halliday* v. *Bank of Stewart County,* 112 *Ga.* 461 (37 S. E. 721); *Witt* v. *Nesar,* 145 *Ga.* 674 (3) (89 S. E. 747). She sued to recover the entire value of the stock, alleged to be $80,000. While this sum should be reduced by the amount of the debt, the petition was not for this reason subject to general demurrer. Such a demurrer is addressed to the

entire petition, and should be overruled if any part of the petition is good in substance. *Blaylock* v. *Hackel,* 164 *Ga.* 257 (5) (138 S. E. 333). Whether or not the plaintiff might have a recovery in some other action for the amount deposited to her credit, but withdrawn by her husband on checks alleged to have been altered, is not a matter for consideration under the present record.

In the seventh division of the opinion the Court of Appeals held: "The contention that even if there were a valid pledge of the stock to the bank, the plaintiff had a sufficient legal title to maintain an action of trover for its conversion, is not well taken as against the pledge, where it is not shown that the legal title did not go into the pledgee under the terms of the original pledge, and where it is not shown that the pledgee did anything it did not have a perfect legal right to do." In paragraph 8 of the petition for certiorari it was contended that this ruling was erroneous for the following reasons: "The contention of petitioner was that if she was bound for the $30,000 loan because the proceeds of the loan were drawn out on checks signed by her and that her stock was liable to the bank for this pledge, that the bank converted her stock when it procured the transfer of the stock on the forged letter, and in that case her damages would be reduced by the amount of the loan." Under the foregoing principles, this assignment of error is well taken. It is unnecessary to consider in detail other assignments of error. So far as the decision and judgment under review are at variance with the foregoing rulings, they must be held erroneous. The case is therefore remanded to the Court of Appeals for further proceedings not inconsistent with this opinion. *Judgment reversed. All the Justices concur.*